**In re DISSOLUTION OF MARRIAGE OF AL–FAOUR.**

[Cite as *In re Dissolution of Marriage of Al–Faour* (1990), 68 Ohio App.3d 279.]

Court of Appeals of Ohio,
Franklin County.

No. 89AP–789.

Decided June 28, 1990.

*David B. Tyack,* for appellee.

*Postlewaite & O'Brien* and *Charles C. Postlewaite,* for appellant.

JOHN C. YOUNG, Judge.

This matter is before this court upon the appeal of Anita Al–Faour, n.k.a. Anita Dennewitz, appellant, from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, denying the part of her motion requesting an increase in child support. When appellant and appellee, Osama Al–Faour, filed their dissolution of marriage in June 1985, it was agreed that appellant would retain custody of the parties' minor child. The decree provided for child support in the amount of $20 per week and an additional $40 per month for any month in which appellee did not travel to Florida to visit with the child. In 1986, appellee filed a motion to terminate support because he asserted he was being denied visitation. This motion was granted; however, appellant never participated in this motion. In 1988, appellee filed motions for contempt and visitation and obtained service upon appellant by publication.

Subsequently, appellant filed a motion challenging the propriety of service and requested not only a reinstatement, but, also, an increase in child support. At the August 1988 hearing, the parties submitted a "Memorandum of Agreement" to the referee. The agreement provided that the parties would exchange financial information within three weeks and submit their respective memorandum of financial information to the court. Appellant submitted information to appellee but appellee did not reciprocate. Appellant filed with the court an affidavit which projected her 1988 gross income. When appellee failed to file any income documentation with the court, appellant filed a portion of appellee's deposition testimony regarding his current income.

The referee issued her report on March 29, 1989. The referee's report made mention of an *ex parte* meeting with appellee's counsel indicating that appellee's financial documentation would not be submitted. In December 1988, appellant filed a "Motion to Compel Specific Performance," which requested that the referee enforce the in-court "Memorandum of Agreement." A hearing was held but appellant was not present. The referee issued her report and appellant's counsel filed an objection, which was subsequently overruled. Thereafter, this appeal ensued and appellant now asserts the following five assignments of error:

"1. The trial court abused its discretion in applying Common Pleas Superintendence Rule 75 as amended October 1, 1988 when it should have applied the October 1, 1987 version of the Rule when both the Appellant's Motion for Increase in Support and the court hearing to determine said issues were scheduled prior to the effective date of the amended October 1, 1988 version of Rule 75, particularly when a timely decision would have been rendered prior to October 1, 1988.

"2. The trial court abused its discretion and erred in holding that insufficient evidence was presented from which to make a finding that there was a substantial change in circumstances to vest the trial court with jurisdiction to increase the child support, in contradiction to Common Pleas Superintendence Rule 75 effective October 1, 1987.

"3. The trial court abused its discretion and erred in failing to make an increase determination based upon the Common Pleas Superintendence Rule 75 guidelines when it had been provided with the gross income information of both parties.

"4. The trial court abused its discretion and erred in failing to award Appellant child support in the amount of $81.61 plus poundage per week effective from the date of the filing of her motion which was June 23, 1988.

"5. The trial court abused its discretion and erred in requiring Appellant to appear for a hearing on Appellant's Motion for Specific Performance when the in court Memorandum of Agreement signed and acknowledged by all parties, and approved by the Court, was the issue of contention."

In her first assignment of error, appellant asserts that the trial court abused its discretion in applying the October 1988 amended version of the Child Support Guidelines instead of the October 1, 1987 version. A trial court does not abuse its discretion in applying the guidelines to modify an order originally entered prior to the effective date of the most recent guidelines. *Dillon v. Dillon* (Sept. 20, 1988), Franklin App. No. 88AP–232, unreported, 1988 WL 99324. A modified child support order creates new obligations based

upon the present status of the parties and a change of circumstances and thus is not retroactive.

The guidelines invoke the same criteria that a court must use to determine the necessary amount of child support under R.C. 3109.05(A). More specifically, the Supreme Court based the guidelines upon the "Income Share Model" developed by the Child Support Guidelines Project of the National Center for State Courts, under a grant from the U.S. Office of Child Support Enforcement. See Supreme Court Advisory Committee on Child Support Enforcement, C.P.Sup.R. 75 Commentary. The Income Share Model is based upon "the concept that the child receive the same proportion of parental income that he or she would have received if the parents lived together." *Dillon, supra.* Under R.C. 3109.05(A), the Supreme Court has defined the amount necessary for child support as " * * * that amount necessary to maintain for the child the standard of living he would have enjoyed had the marriage continued * * *." *Cheek v. Cheek* (1982), 2 Ohio App.3d 86, 88, 2 OBR 95, 98, 440 N.E.2d 831, 834–835; see, also, *Birath v. Birath* (1988), 53 Ohio App.3d 31, 558 N.E.2d 63. The guidelines became mandatory on October 1, 1987, and were amended October 1, 1988, and enabled the court system to improve the equity and uniformity of child support awards. See Amendments to the Rules of Superintendence for Courts of Common Pleas, Preface, October 1, 1988. Since the amended version of the guidelines uses the same test to determine child support as R.C. 3109.95(A), there is no abuse of discretion when a court applies the most recent amended version.

On April 12, 1990, the Supreme Court's Child Support Guidelines were codified by the General Assembly and comport to the mandates set forth in the Federal 1984 Child Support Amendment to the Federal 1980 Adoption Act and the Federal 1988 Family Support Act. This state legislative action now permits this state to qualify for federal funding.

The court's determination of what amount is necessary for child support in a given case is only the first part of a court's inquiry under R.C. 3109.05(A). The court must then set a reasonable amount of child support. *Cheek, supra.*

The amended version of the Child Support Guidelines, effective October 1, 1988, states, in pertinent part:

" * * * When a support order due an obligee would have a variance in excess of ten percent (10%), that variance shall be deemed to be a change of circumstance which may be considered by the Court in determining whether all the changes of circumstances are substantial enough to require a modifica-

tion of the support order. The Court shall determine from applicable statutory and case law whether the change of circumstances is substantial and not contemplated at the time of the last prior order. If the Court then determines that a change in support is merited, it is not mandatory that the child support be modified to the level of the Guidelines."

Section III(A)(5) states:

" * * * *Earnings and income statements of the parents shall be verified with documentation* of both current and past earnings and income. Suitable documentation of current earnings and income includes paystubs, employer statements, or receipts and expenses if self-employed. Documentation of current earnings and income may be supplemented with copies of the most recent tax returns and all supporting documentation and schedules to provide verification of earnings and income for a longer period of time." (Emphasis added.)

In the facts before this court, the trial court did not abuse its discretion in applying the Child Support Guidelines as amended October 1, 1988.

█ It only makes logical sense that the most recent revision of the Child Support Guidelines would apply to the facts of this case. The Child Support Guidelines were revised and amended a year after they became mandatory, after practitioners made viable suggestions to correct the inequities in the original version of the guidelines. This court does not see the wisdom in applying the October 1, 1987 version of the guidelines to the facts at bar when the purpose of the October 1, 1988 guidelines was to refine the inequities found in the practical application of the October 1, 1987 version of the guidelines. However, in applying the amended guidelines, it is mandatory that the parties verify their respective earning and income statements with documentation. See Section III(A)(5). In the facts before this court, the referee noted in her report:

" * * * At some time subsequent to the August hearing, counsel for Petitioner–Husband informally approached the court and advised that visitation as set forth in the Memorandum of Agreement was not provided and that the financial information would not be forthcoming. * * * "

█ Since the matter of child support in this case had never been reviewed in light of any Child Support Guidelines, the appellee was under a mandatory obligation to provide documentation to verify his income and earnings in order that the matter could properly be reviewed. The mandatory language of the newly enacted codified Child Support Guidelines provides that the parents be required to verify current and past income and personal earnings with suitable documents. See R.C. 3113.215(B)(5)(a). The problem that develops is what

course of action is available to a party when the other party refuses to comply with the mandatory obligation of verifying income and earnings with documentation.

In her report, the referee indicated that appellant had not submitted sufficient information upon which to make a determination on the issue of increased child support. Upon review of the record, appellant had complied with all the mandates of the guidelines by submitting documentation to verify her income and earnings; appellee had not complied with these mandates. It was incumbent at this point for the appellant to subpoena into court the documentation to verify appellee's income and earnings. It was only by this action, under the power of a subpoena duces tecum, that the trial court could act in the event that appellee failed to comply. Accordingly, appellant's first assignment of error is not well taken and is overruled.

In the second assignment of error, appellant asserts that the trial court erred in holding that there was insufficient evidence upon which to make a determination regarding an increase in child support. As previously discussed in the disposition of appellant's first assignment of error, there was an insufficient amount of evidence upon which to base a decision since appellee failed to meet his mandatory obligation in providing the trial court with documentation verifying his income and earnings. Likewise, at the point in time that appellee failed to meet this mandatory obligation, appellant did not exercise her option to subpoena into court the documentation which was needed to make a proper determination regarding child support. Thus, the trial court was not in error in finding that there was insufficient evidence. See R.C. 3113.215(B)(5)(a). Accordingly, appellant's second assignment of error is not well taken and is overruled.

In her third assignment of error, appellant asserts that the trial court abused its discretion in failing to make a determination regarding an increase in child support when it had been provided with the gross income information of both parties. Upon review, when appellee refused to submit information to the court regarding his income and earnings, appellant submitted a portion of appellee's deposition testimony regarding his income and earnings. However, Section III(A)(5) mandates that income and earnings be verified by documentation provided by each respective party. Appellee failed to provide the court with this documentation and appellant failed to subpoena this documentation to provide the trial court with evidence sufficient enough to make a decision. Accordingly, appellant's third assignment of error is not well taken and is overruled.

In the fourth assignment of error, appellant asserts that the trial court erred in failing to award child support in the amount of $81.61 per week plus poundage, effective from the date of filing, June 23, 1988. As set forth in the disposition of appellant's first assignment of error, the October 1, 1988 amended Child Support Guidelines are applicable to the facts before this court. Since the record demonstrates that appellee failed to provide information and documentation regarding his income and earnings and that he was under no power of subpoena to supply this information to the court, appellant's fourth assignment of error is not well taken and is overruled.

Appellant asserts in her fifth assignment of error that the trial court erred in requiring appellant to appear for a hearing on her motion for specific performance regarding the memorandum of agreement. The memorandum of agreement makes no mention of child support other than the following: "Parties do not agree as to C support become effective."

The memorandum of agreement does detail a visitation schedule agreed to by the parties; however, the record reveals that a major source of contention between these parties is the issue of visitation. When a noncustodial parent is denied visitation rights, he shall obtain an appropriate remedy through proper legal channels rather than refusing to make support payments. *Flynn v. Flynn* (1984), 15 Ohio App.3d 34, 15 OBR 57, 472 N.E.2d 388. The trial court is not bound by the agreement of the parents, particularly as in this situation where visitation is a major source of contention. See *Miller v. Miller* (1966), 7 Ohio App.2d 22, 36 O.O.2d 69, 218 N.E.2d 630. The 1988 Child Support Guidelines, Section (G)(VIII), states that "[e]very court order establishing child support should contain specific language for regular, holiday, vacation, and special visitation consistent with Ohio statutes." See, also, newly enacted R.C. 3113.215(C) and 3109.05(D).

The referee's report indicates that both parties were either to submit a typewritten and executed memorandum settling all issues to the satisfaction of both parties or they were to appear for a hearing on December 19, 1988. Counsel for both parties appeared, but their respective clients did not. Although it is certainly understandable as to why it was important for the parties to appear for the December 19, 1988 and February 3, 1989 hearings, the record reflects that appellant was represented by counsel and was not under any power of subpoena or compelled by any court order to appear before the court. Thus, with no legal basis upon which to require appellant's presence, the trial court erred in requiring her to appear for the December 19, 1988 and February 3, 1989 hearings. Accordingly, appellant's fifth assignment of error is well taken. However, the court finds that the error is not prejudicial and, accordingly, overrules appellant's fifth assignment of error.

Based on the foregoing, appellant's first, second, third, fourth, and fifth assignments of error are overruled. The judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, is affirmed.

*Judgment affirmed.*

BOWMAN and HOFSTETTER, JJ., concur.

EDWIN T. HOFSTETTER, J., retired, of the Eleventh Appellate District, sitting by assignment.